IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. MCGINNIS, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-6484 |
| | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                               **June 26, 2019**

Plaintiff John F. McGinnis, Jr. asks this Court to review the denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI) prior to June 13, 2009 by Defendant the Social Security Administration. McGinnis claims he was disabled beginning on June 14, 2004 due to degenerative disc disease of the cervical spine, cervical radiculopathy, and carpal tunnel syndrome. McGinnis asks the Court to reverse the Administration's decision and order a finding of disability beginning on June 14, 2004, or, in the alternative, remand for a new administrative hearing to resolve alleged errors in the administrative law judge's (ALJ) determination.

United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation (R&R) recommending McGinnis's requested relief be denied and the Administration's decision be affirmed. McGinnis objects to the R&R, arguing the ALJ's errors in determining his residual functional capacity (RFC) warrant reversal and remand. For the reasons set forth below, McGinnis's objections will be overruled, the R&R will be approved and adopted, and the decision of the Administration will be affirmed.

**BACKGROUND**

On November 21, 2006, McGinnis filed for DIB and SSI, alleging disability beginning February 12, 2003. Administrative Record (A.R.), 59–60. On April 17, 2007, McGinnis's

applications were denied by the state agency and he requested a hearing before an ALJ. *Id.* at 61–72. On October 3, 2008, a hearing was held. *Id.* at 18–57. On December 1, 2008, the ALJ decided McGinnis was not disabled as of the alleged onset date. *Id.* at 7–17. McGinnis requested review of the ALJ's decision, which the Appeals Council denied on July 27, 2010. *Id.* at 1–5. McGinnis filed an action for review in this Court, *McGinnis v. Soc. Sec. Admin.*, Civil Action No. 11-5957 (E.D. Pa. filed Sept. 21, 2011), and the Administration moved for remand to, *inter alia*, "reevaluate the weight given to the consultative examiners, Drs. Abraham and Person." *See* A.R., 296–97. On May 22, 2012, this Court remanded the case to the Administration for additional administrative proceedings. *Id.* at 295. The Appeals Council referred the case to an ALJ for an additional hearing. *Id.* at 319–22.

On December 18, 2012, the second administrative hearing was held. *Id.* at 265–88. At the hearing, McGinnis amended his alleged onset date to June 14, 2004, his 50th birthday. *Id.* at 269. He alleged disability due to degenerative disc disease, cervical radiculopathy, and carpal tunnel syndrome. *Id.* McGinnis testified he experienced radiating neck pain. *Id.* at 277. He experienced numbness, but no pain, in his hands and he dropped objects, like the TV remote, keys, and newspapers. *Id.* at 277, 283–84. He stated his neck locked, preventing him from turning it. *Id.* at 280. McGinnis's back pain also caused him difficulty sleeping. *Id.* at 281. He testified he became exhausted from the pain "after 15 minutes," *id.* at 283, and expressed difficulty sitting, standing, and bending. *Id.* at 284. McGinnis also testified he would not be able to stand for 6 hours in a workday. *Id.* at 285. McGinnis estimated he could lift 5 pounds without being in pain. *Id.* McGinnis stated he took Advil, which eased his pain, but did not resolve it. *Id.* at 280.

McGinnis was a mail carrier for the United States Postal Service for approximately 29 years, ending in February of 2003. *Id.* at 135. At the December 18, 2012, hearing, McGinnis

testified he went to the library and to Burger King, where he talked with friends for three or four hours. *Id.* at 272. Once or twice a week, McGinnis went to the casino, occasionally requiring multi-hour bus trips. *See id.* at 273–75 (testifying he took occasional trips to Atlantic City or Wilkes Barre). He took monthly trips to the mall. *Id.* at 273–74. McGinnis occasionally cleaned the cellar but did not otherwise work on his house or in the yard. *See id.* at 283. He testified he did the laundry but got exhausted after 15 minutes. *Id.* at 283. McGinnis had previously documented that he prepared food daily and had no problems with personal care. *Id.* at 141–42.

Cheryl Collier-Brown, M.D. treated McGinnis from at least January 4, 2002 to August 30, 2002, and once on September 13, 2005. *See id.* at 176, 181–204. Dr. Collier-Brown received a January 4, 2002, orthopedist report and EMG/nerve conduction study. *Id.* at 176–77, 207–08. Dr. Collier-Brown also received a March 6, 2002, MRI study. *Id.* at 205. Dr. Collier-Brown's notes indicate an x-ray of McGinnis was taken and he was referred to a hand specialist. *Id.* at 201–03.

On January 8, 2002, Dr. Collier-Brown indicated in her treatment notes McGinnis was unable to work. *Id.* at 203. On April 12, 2002, Dr. Collier-Brown noted McGinnis could return to light duty for 2–4 hours a day, could lift no more than 15–20 pounds, and was not ready to return to a mail route. *See id.* at 196. On April 29, 2002, Dr. Collier-Brown completed a "Medical Examination and Assessment" for the U.S. Postal Service.[1] *Id.* at 178–79. Dr. Collier-Brown limited McGinnis to "no heavy or moderate lifting/carrying." *Id.* She added notes to the assessment on May 8, 2002, indicating lifting and carrying should be limited to less than or equal to 15–20 pounds. *Id.* at 179. She limited McGinnis to light lifting, packing, and sorting. *Id.* She did not indicate any time limits on McGinnis's restricted duty. *Id.*

---

[1] The ALJ referred to this document as a "Return to Work/Fitness for Duty" form. *Id.* at 340.

On June 17, 2002, in her treatment notes, Dr. Collier-Brown indicated McGinnis could return to carrying mail for 1–2 hours a day. *Id.* at 193. On July 23, 2002, Dr. Collier-Brown noted McGinnis's neck was improved and that his left hand was doing well, "70–80%" back to normal. *Id.* at 189. On August 30, 2002, Dr. Collier-Brown stated McGinnis was carrying mail 2 hours a day without problems. *Id.* at 187. She wrote McGinnis could return to work full duty as of September 4, 2002. *Id.* There are no other documented visits with Dr. Collier-Brown until September 13, 2005.[2] *Id.* at 183. On that date, she noted McGinnis was dropping things because of decreased strength/numbness. *Id.* She also wrote "[c]annot medically support [permanent] disability as he has not had [workup], treatment, specifically [evaluations,] since ~2002. May get [significant] relief and improvement [with] treatment." *Id.*

On March 19, 2007, Jeffrey Perlson, D.O. examined McGinnis for the Pennsylvania Bureau of Disability Determination. *Id.* at 213. Dr. Perlson recounted McGinnis's degenerative spine disease and carpal tunnel diagnoses. *Id.* He noted McGinnis complained of neck pain and, "[t]he paresthesias in both arms are somewhat worse on the left than on the right and occasionally will awaken him at night." *Id.* Dr. Perlson also cited the EMG and MRI studies ordered by Dr. Collier-Brown. *Id.* In his medical source statement, Dr. Perlson limited McGinnis to lifting "10 pounds occasionally, 2 to 3 pounds frequently." *Id.* Dr. Perlson recommended no further weight "on the basis of [McGinnis's] history." *Id.* Dr. Perlson did not limit McGinnis's standing and walking. *Id.* Dr. Perlson recommended modest restrictions on upper extremity pushing and pulling. *Id.* As for lower extremity pushing and pulling restrictions, Dr. Perlson wrote, "[n]o restrictions whatsoever based on the history of carpal tunnel syndrome and propensity for pain, weakness and

---

[2] McGinnis visited Dr. Collier-Brown's practice on July 1, 2005, and on September 19, 2006, but was seen by a different doctor. R., 181–82, 185–86. The notes from the July 1, 2005 visit restate McGinnis's symptoms. *Id.*

4

tingling in the upper extremities and the history of dropping objects at times." *Id.* Dr. Perlson observed McGinnis's mobility getting on and off an examination table, walking, squatting, and getting in and out of a chair, and noted it was not affected. *Id.* at 217.

On approximately February 5, 2008, Ronald Abraham, D.O. examined McGinnis for the Pennsylvania Bureau of Disability Determination. *Id.* at 227. Dr. Abraham noted McGinnis's complaints of back, neck, shoulder, and left arm pain. *Id.* Dr. Abraham noted McGinnis had "difficulties reaching overhead, carrying objects, reaching behind his back, bending, and prolonged sitting increased pain [sic]." *Id.* Dr. Abraham examined McGinnis and reviewed his medical history. *Id.* at 228. Dr. Abraham concluded McGinnis had "chronic cervical dorsal pain underlying cervical degenerative changes, right C6 radiculopathy, bilateral carpal tunnel syndrome, [and] chronic cervical pain syndrome." *Id.* at 229. In his medical source statement, Dr. Abraham limited McGinnis's lifting and carrying to 2–3 pounds frequently and 10 pounds occasionally, his standing and walking to 30 minutes in an 8-hour day, and his sitting to 30 minutes in an 8-hour day. *Id.* at 230. Dr. Abraham limited McGinnis's upper extremity pushing and pulling. *Id.* Dr. Abraham indicated McGinnis could occasionally bend and kneel, but never stoop, crouch, balance, or climb. *Id.* at 231. Dr. Abraham also indicated McGinnis's reaching was impaired. *Id.*

After taking testimony, the ALJ applied the sequential, five-step process used by the Administration to make a disability determination.[3] *Id.* at 333–44. At step four, the ALJ determined

---

[3] In step one, the ALJ determines if the claimant is currently engaging in substantial gainful activity and, if so, finds the claimant ineligible for disability benefits; in step two, the ALJ determines whether the claimant suffers from a severe impairment and, if not, finds the claimant ineligible; in step three, the ALJ determines whether the claimant suffers from a listed impairment or its equivalent, and, if so, finds the claimant eligible; in step four, the ALJ determines whether the claimant retains the residual functional capacity to perform his or her past work, and, if so, finds the claimant ineligible; in step five, the ALJ determines whether the claimant retains the residual functional capacity to engage in other available work and, if so, finds the claimant ineligible. *Jones*

5

that McGinnis retained the RFC to perform "light work." *Id.* at 334. As defined by the Administration regulations, "light work,"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The physical exertion requirements of light work exceed those of "sedentary work," which

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

In support of her RFC determination, the ALJ accepted Dr. Collier-Brown's opinion in the Medical Examination and Assessment form, "that claimant could do light lifting, packing, and sorting (less than or equal to fifteen to twenty pounds)" and afforded it controlling weight. A.R., 340. The ALJ determined the "claimant had no limitations in sitting, standing, or walking." *Id.* at 341. The ALJ also noted her RFC determination was supported by, *inter alia*, Collier-Brown's "subsequent opinions in June and August 2002, which indicated that claimant could perform light exertional work (and eventually was released to his prior full duty medium exertional work as a mail carrier)." *Id.* at 342.

---

*v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520). Steps one through three are inapplicable to McGinnis's objections and therefore will not be discussed.

The ALJ rejected McGinnis's own "statements concerning the intensity, persistence, and limiting effects" of his symptoms as not credible. *Id.* at 337. The ALJ described two "credibility issues." *See id.* First, McGinnis testified and stated in an Adult Disability Report he chose not to return to work after being reinstated because he was "in the process of [his] disabilities being diagnosed" and was fired in February 2003 for being absent without leave. *Id.* However, medical documentation showed he did not go back to work because he was convicted of a DUI, lost his license, and would have had to walk his route. *Id.* His decision not to return to work was around the time he was cleared to return to full duty in September 2002. *Id.* Second, the ALJ identified that McGinnis had not sought any medical treatment since 2003. *Id.* The ALJ acknowledged this was subsequent to McGinnis's loss of medical insurance, but also noted he did not attempt to obtain any medical assistance until September 2006. *Id.*

The ALJ partially accepted and partially rejected Dr. Perlson's opinion. *Id.* at 341–42. The ALJ noted that Dr. Perlson "opined that claimant could lift/carry ten pounds occasionally and two to three pounds frequently and no other weights 'on the basis of his history,' . . . ." *Id.* at 341. The ALJ concluded, "[t]o the extent Dr. Perlson opined that claimant can do only less than sedentary work, the undersigned rejects this opinion and gives it no weight . . . . To the contrary, the evidence indicates claimant is extremely active and takes no pain medication . . . except Advil on occasion." *Id.* The ALJ "accept[ed] and accord[ed] partial weight to the remainder of Dr. Perlson's opinion that claimant had no limitations in sitting, standing, walking, manipulative activities, . . . and all postural activities except climbing." *Id.* at 341–42.

The ALJ rejected Dr. Abraham's opinion in its entirety, "particularly to the extent that it limit[ed] claimant to only less than sedentary work." *Id.* at 342. The ALJ noted it was inconsistent with Dr. Collier-Brown's opinions and with the accepted portion of Dr. Perlson's opinion. *Id.* The

7

ALJ also found Dr. Abraham's opinion to be "clearly based only on claimant's subjective complaints." *Id.*

The ALJ issued a decision on February 6, 2013, finding McGinnis was disabled beginning on June 13, 2009, but not disabled, and not entitled to benefits, before that date. *Id.* at 327–47. McGinnis again requested review of the ALJ's decision, which the Appeals Council denied on September 16, 2013. *Id.* at 240–44, 248–54.

On December 5, 2013, McGinnis filed the instant action seeking review of the Administration's decision. *See* Compl. The matter was referred to Judge Perkin for an R&R. Order, March 20, 2015. Judge Perkin recommended denying McGinnis relief and affirming the Administration's decision. R&R, 21 (ECF No. 26). McGinnis now objects to the R&R.

**DISCUSSION**

This Court reviews *de novo* McGinnis's objections to the R&R. 28 U.S.C. § 636(b)(1). This Court is bound to the ALJ's decision if it is supported by substantial evidence in the record. *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). "Substantial evidence" is relevant evidence "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Substantial evidence is less than a preponderance but more than a mere scintilla. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The substantial evidence standard is deferential, *id.*, as "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determination." *Chandler v. Comm'r of Soc. Sec. Admin.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although not clearly delineated as such in his objections or initial brief, McGinnis argues two errors were made by the ALJ that Judge Perkin did not address. First, McGinnis argues the ALJ had no basis to determine McGinnis was capable of light work, particularly when faced with Dr. Perlson's and Dr. Abraham's opinions to the contrary. Second, McGinnis argues the ALJ did not properly weigh Dr. Perlson and Dr. Abraham's

8

opinions, or at least did not adequately explain the extent to which he rejected their opinions. Both of these errors, McGinnis argues, resulted in an RFC determination that was not supported by substantial evidence. At the fourth step of the ALJ's evaluation, the claimant has the burden of demonstrating he lacks sufficient RFC to perform his past relevant work. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Contrary to the position McGinnis takes in his first argument, the ALJ relied on the opinion of Dr. Collier-Brown to determine that McGinnis had an RFC to perform light work, and this was substantial evidence that justified the ALJ's determination. An ALJ cannot substitute her lay opinion for medical expert opinion. *Morales*, 225 F.3d at 319. Instead, an ALJ must accord a treating physician's report "great weight," especially when the opinion is "based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* at 317 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (internal quotation marks omitted). The ALJ can only reject a treating physician's opinion outright based on contradicting medical evidence, not "due to his or her own credibility judgments, speculation or lay opinion." *Id.* The ALJ "is required to consider all medical opinions in the record. The regulations do not carve out an exception for medical opinions which predate the alleged onset of disability." *D'Errico v. Berryhill*, No. 17-5095, 2019 WL 1440044, at *3 (E.D. Pa. April 1, 2019); *see also Chandler*, 667 F.3d at 361 ("We have permitted reliance on records much older than those presenting in this case.").

The ALJ determined McGinnis had an RFC to perform light work, which includes work "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). McGinnis contends no physician opined he could conduct light work "during the period at issue." Pl.'s Br., 11. Therefore, McGinnis argues, the ALJ

9

improperly relied on her lay opinion, and not substantial evidence, to conclude McGinnis could perform light work.

The ALJ, however, expressly credited and relied on the opinions of Dr. Collier-Brown, who concluded McGinnis was capable of light work. Because Dr. Collier-Brown treated McGinnis for eight months in 2002, the ALJ was obligated to consider this opinion and afford it "great weight." *Morales*, 225 F.3d at 317. McGinnis's argument suggests that, because Dr. Collier-Brown's assessments pre-dated the alleged onset date by two years, they do not count as competent evidence of his ability to perform light work. This argument is unpersuasive because it would have been error for the ALJ to disregard Dr. Collier-Brown's opinions entirely. As *D'Errico* illustrates, the ALJ must consider *all* medical opinions of record, even where they predate the alleged onset date. 2019 WL 1440044, at *3. Additionally, the ALJ took note of the progressive improvement of McGinnis during Dr. Collier-Brown's treatment, that McGinnis was cleared to return to full duty as a mail carrier in September 2002, and that McGinnis was not being treated for his symptoms between 2003 and 2006. Based on these factors, it is apparent to the Court the ALJ was aware Dr. Collier-Brown's opinions were prior to the alleged onset date of June 14, 2004 and took this into consideration. The Court cannot agree with McGinnis that Dr. Collier-Brown's opinions should have been disregarded. Given the deferential standard of review, Dr. Collier-Brown's medical opinions, supplemented by the objective medical evidence and McGinnis's testimony about his activities, was substantial evidence the ALJ could rely on to determine McGinnis was capable of light work.

McGinnis's argument that the ALJ failed to adequately weigh the opinions of Dr. Perlson and Dr. Abraham, or adequately explain her rejection of these opinions, is also unpersuasive. The ALJ's rejection of these opinions was within her discretion and adequately explained. The ALJ

makes the ultimate disability and RFC determination and the opinion of a physician "does not bind the ALJ on the issue of functional capacity." *Chandler*, 667 F.3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). However, when comparing conflicting physician opinions, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429) (internal quotation marks omitted). A single piece of evidence is not substantial if the ALJ "failed to resolve a conflict created by countervailing evidence or if it is overwhelmed by other evidence—particularly that offered by a treating physician." *Id.* at 320. The ALJ is required to state the reasons for her decision. *Jones*, 364 F.3d at 504 (3d Cir. 2004) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000)). But the ALJ is not required to use particular language in doing so. *Id.* at 505. Rather, the ALJ's analysis should sufficiently develop the record and explain findings to permit meaningful review. *See id.* (reading the ALJ's decision "as a whole" and determining the ALJ considered the appropriate factors in arriving at his conclusions). In *Navas v. Commissioner of Social Security*, the ALJ determined the claimant had an RFC to perform light work. 289 F. App'x 555, 557–58 (3d Cir. 2008). The Third Circuit rejected the claimant's argument that the ALJ had erred in failing to expressly define the claimant's sitting, standing, and walking limitations, because the ALJ had "implicitly found" the claimant was capable of performing these functions consistent with the definition of light work. *Id.*

McGinnis attacks the ALJ's consideration of the opinions of Dr. Perlson and Dr. Abraham on multiple grounds. McGinnis claims the ALJ incorrectly believed Dr. Perlson and Dr. Abraham concluded McGinnis was only capable of "less than sedentary work," and the ALJ rejected their opinions only to the extent they opine McGinnis was capable of less than sedentary work. McGinnis argues this also means the ALJ never specifically rejected the sedentary-level lifting

11

and carrying restrictions proposed by Dr. Perlson and Dr. Abraham. These arguments carry little weight as it relates to Dr. Abraham's opinion. Dr. Abraham opined McGinnis could not sit more than 30 minutes, so the ALJ was justified in concluding Dr. Abraham believed McGinnis was only capable of less than sedentary work. Further, the ALJ rejected Dr. Abraham's opinion, "particularly," but not exclusively, to the extent Dr. Abraham limited McGinnis to less than sedentary work. Put differently, the ALJ rejected Dr. Abraham's opinion without qualification, in its entirety.

Turning to Dr. Perlson's opinion, the Court agrees with McGinnis that the limitations described by Dr. Perlson are consistent with sedentary, not less than sedentary, work.[4] More importantly, the ALJ stated "[t]o the extent Dr. Perlson opined that claimant can do only less than sedentary work, the undersigned rejects this opinion and gives it no weight . . . ." *Id.* at 341. McGinnis is correct that, taken in isolation, this statement neither rejects nor accepts Dr. Perlson's opinion that McGinnis was capable of only sedentary, but not light, work. But the ALJ's assessment of Dr. Perlson's opinion and his assessment of the evidence as a whole are not limited to this one statement. Rather, the ALJ contrasted Dr. Perlson's opinion with other evidence, including Dr. Collier-Brown's clearance of McGinnis for light work. *Id.* at 341. The ALJ also considered Dr. Perlson's opinion of McGinnis's sitting, standing, walking, manipulative limitations, postural limitations, and pushing and pulling restrictions, and either rejected or accepted them consistent with an RFC to perform light work.

The ALJ's failure to expressly and specifically reject the lifting and carrying restrictions proposed by Dr. Perlson is not fatal to her analysis. First, the ALJ did not ignore the lifting and

---

[4] However, at the administrative hearing, McGinnis's prior counsel argued that both Dr. Perlson and Dr. Abraham "put[] the claimant at least at a sedentary level, if not sub-sedentary level." A.R., 270.

carrying restriction. She identified this aspect of Dr. Perlson's opinion but chose to explicitly accept, and accord controlling weight to, Dr. Collier-Brown's lifting and carrying restriction. The rejection of Dr. Perlson's lifting and carrying restriction, therefore, is implicit in the ALJ's acceptance of Dr. Collier-Brown's restriction, in the ALJ's acceptance of Dr. Collier-Brown's approval of McGinnis performing light work, and in the ALJ's RFC determination that McGinnis could perform light work. It is clear she rejected this aspect of Dr. Perlson's opinion and it is clear she did so in favor of Dr. Collier-Brown's opinion. *See Navas*, 289 F. App'x at 557–58 (finding ALJ's determination the claimant could perform light work meant the ALJ "implicitly found" the claimant capable of the sitting, standing, and walking requirements not expressly addressed).

Finally, McGinnis briefly contends the ALJ incorrectly believed the opinions of Dr. Perlson and Dr. Abraham to be based only on McGinnis's subjective complaints. But the ALJ's determination that some or all of Dr. Perlson or Dr. Abraham's opinions were based on subjective complaints was not the primary, much less a necessary, reason for the ALJ's rejection of those opinions. Instead, the ALJ found the opinions were contradicted by Dr. Collier-Brown's opinion and portions of McGinnis's testimony. *See Morales*, 225 F.3d at 317 ("the ALJ may choose whom to credit"). Moreover, there is no indication the ALJ was incorrect in determining certain portions of those opinions were based only on McGinnis's subjective complaints. McGinnis contends Dr. Perlson and Dr. Abraham reviewed the 2002 MRI and EMG studies, but there is no indication how they informed the specific limitations rejected by the ALJ. The fact that Dr. Collier-Brown relied on the same studies and reached different conclusions indicates these studies do not command a specific conclusion, and it was reasonable for the ALJ to determine that Dr. Perlson and Dr. Abraham relied on subjective complaints. As with other aspects of her RFC determination, the ALJ was obligated to determine which of these opinions to accept, and the Court, having found

her determinations supported by substantial evidence and adequately explained, does not re-weigh the medical opinions against each other.

**CONCLUSION**

Because the ALJ properly considered the opinion of a treating physician that McGinnis was capable of light work, and because she properly assessed the opinions of Dr. Perlson and Dr. Abraham, the Court concludes the Administration's decision was supported by substantial evidence. Therefore, McGinnis's objections will be overruled, the R&R will be approved and adopted, and the decision of the Administration will be affirmed.

An appropriate Order follows.

                                        BY THE COURT:

                                          /s/ Juan R. Sánchez
                                        Juan R. Sánchez, C.J.